UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br>v.<br><br>ANDY P. VONGDALA,<br><br>Defendant(s). | CASE NO. CR24-0107-KKE<br><br>ORDER ON PRETRIAL MOTIONS |

Defendant Andy Vongdala was indicted in June 2024 on five counts: two counts of possession of controlled substances with intent to distribute, possession of a firearm in furtherance of a drug trafficking crime, and two counts of unlawful possession of a firearm. Dkt. No. 12. Vongdala pleaded not guilty and this case is set for trial to begin on October 13, 2026. Dkt. Nos. 16, 48.

Vongdala filed three pretrial motions, one seeking to bifurcate the two counts of unlawful possession of a firearm, and the other two seeking to suppress evidence. Dkt. Nos. 41, 42, 43. The motion to bifurcate is not opposed, but the Government opposes the motions to suppress. The Court held oral argument on the pretrial motions on September 10, 2026. Dkt. No. 64. For the following reasons, the Court will grant the unopposed motion to bifurcate, but deny the motions to suppress.

## I. ANALYSIS

### A. The Unopposed Motion to Bifurcate Is Granted.

Vongdala requests that he be first tried on the charges of possession of controlled substances with intent to distribute and possession of a firearm in furtherance of a drug trafficking crime, and then be tried by the same jury on the unlawful possession of a firearm counts after the jury has reached a verdict on the other counts. Dkt. No. 41.

As noted, the Government did not oppose this motion. The Ninth Circuit has recommended bifurcation in these circumstances. *See United States v. Nguyen*, 88 F.3d 812, 815–18 (9th Cir. 1996). The Government confirmed its acquiescence to bifurcation at the hearing, and the Court will grant this motion.

### B. The Motion to Suppress the Backpack Evidence Is Denied.

On April 26, 2024, the Renton Police Department executed an arrest warrant and residential search warrant on Vongdala, in a burglary investigation led by Detective Brian Jordan. Dkt. No. 52-1. Detective Jordan positively identified Vongdala as he left his apartment. *Id*. at 2. At the time he was arrested, Vongdala was wearing a backpack. *Id*. As Vongdala was placed face down on the ground, the officers removed his backpack. *Id*.

After Vongdala was handcuffed, an officer moved him to a seated position with his legs extended in front of him, facing away from the backpack. Dkt. No. 52-3. Another officer moved the backpack several feet behind Vongdala. *Id*. Officers then instructed Vongdala to stand up, and they frisked him before escorting him to a police vehicle, where they searched him incident to arrest. *Id*. An officer picked up the backpack and moved it closer to the vehicle, and Vongdala was moved to the opposite side of the vehicle from the backpack. *Id*.

During the search of Vongdala's clothing, the officers discovered a wallet, a phone, and two baggies containing a white substance. Dkt. No. 52-1 at 5. Detective Jordan instructed an officer to put those items in Vongdala's backpack. Dkt. No. 52-3. When the officer opened the backpack, he noticed "a bunch of dope" inside. *Id.* The officer put the items from Vongdala's pockets into the backpack along with its original contents, and moved the backpack to a different police vehicle. *Id.*

Twenty-five minutes after Vongdala was arrested, an officer retrieved the backpack from the vehicle and searched it while Vongdala was not in the vicinity of the backpack. Dkt. No. 58-2. The search resulted in the officers discovering a loaded Glock pistol and approximately 6.3 pounds of MDMA that Vongdala now seeks to suppress. Dkt. No. 52-1 at 9.

It is undisputed that the officers did not have a warrant to search Vongdala's backpack either when they first opened it five minutes after Vongdala was arrested, or when they conducted the full search 25 minutes after the arrest. The Government bears the burden of showing that each search fits within an exception to the warrant requirement of the Fourth Amendment. *United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992). A court may suppress evidence obtained as a result of an unconstitutional search or seizure. *Mapp v. Ohio*, 367 U.S. 643, 655–66 (1961).

*1. The Exception for Searches Incident to Arrest Does Not Apply Here.*

The Government argues that the initial backpack opening falls under the search-incident-to-arrest exception to the warrant requirement, which allows that "a search may be made of the person of the arrestee" as well as "the area within the control of the arrestee." *United States v. Robinson*, 414 U.S. 218, 224 (1973). "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 556 U.S. 332, 338 (2009).

The Court rejects the Government's invocation of this exception for multiple reasons. First, at the time that the officer opened the backpack, it was no longer worn by Vongdala nor was it within his control. The officer opened the backpack on one side of a vehicle while Vongdala was handcuffed on another side. The Government has not persuasively argued that Vongdala could have accessed the contents of the backpack at the time it was searched, and thus the search was not justified by a concern for officer safety or evidence destruction.

Moreover, the purpose of the search distinguishes this situation from a search incident to arrest: the officers opened the backpack to place Vongdala's items inside, not to secure the scene or preserve evidence, and did not fully search the backpack at that time. *See Robinson*, 414 U.S. at 234 ("The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial."). Because neither the timing, location, nor purpose of opening the backpack is consistent with a search incident to arrest, the Court finds that this exception does not apply.

At oral argument, the Government argued that because the backpack *could* have been searched incident to arrest, the opening of the backpack should be considered a search incident to arrest. But, as noted by Vongdala's counsel, the same argument could be made any time a defendant is arrested with personal property. The exception for searches incident to arrest does not extend so far. *See, e.g.*, *United States v. Chadwick*, 433 U.S. 1, 15 (1977) ("Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.").

Likewise, the second and complete search of the backpack likewise does not qualify as a search incident to arrest. At the time of the second search, the backpack had been in the police's exclusive control for nearly half an hour and there was no danger that Vongdala could access any of the backpack's contents. Thus, the Court rejects the Government's justification for the backpack searches as searches incident to arrest.

*2. The Inevitable Discovery Exception Applies.*

"The exclusionary rule does not apply … if the government establishes by a preponderance of the evidence that the unlawfully obtained information 'ultimately or inevitably would have been discovered by lawful means[.]'" *United States v. Peterson*, 902 F.3d 1016, 1019 (9th Cir. 2018) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). "It is not unreasonable for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." *Id*. at 1019 (citation modified).

The Government argues that even if the searches of the backpack are not justified as searches incident to arrest, the backpack's contents would have been inevitably discovered during a valid inventory search after Vongdala was booked at the King County Jail on his outstanding felony warrants. According to King County Jail policy, the backpack would not have been accepted at that facility but would have been transported to the Renton Police Department and subject to an inventory search there. *See* Dkt. No. 52-5. Renton Police Department's inventory search policy requires that any weapons or contraband discovered within an inmate's property are placed into evidence. Dkt. No. 52-7. Because the backpack would have been subjected to an inventory search, the Government contends that the inevitable discovery exception to the warrant requirement applies.

Vongdala disputes that an inventory search was inevitable, asserting that he would have been able to avoid booking if he had been informed of his bail amounts and posted bail immediately. Dkt. No. 57 at 9–10. The Government concedes that Vongdala was not informed of his bail amounts, as required by Washington law. *See State v. Caldera*, 929 P.2d 482, 483–84 (Wash. Ct. App. 1997). But even if Vongdala had been informed of his bail amounts on his outstanding warrants, and assuming for the sake of argument that he could have posted bail on those immediately, the Government has shown that Vongdala would have been booked on new charges—unrelated to the evidence discovered in the backpack—for which no bail would have yet been set. Dkt. No. 65.

Because the contents of Vongdala's backpack would have been inevitably discovered as part of an inventory search at the Renton Police Department, the inevitable discovery exception to the warrant requirement applies here. The Court will therefore deny Vongdala's motion to suppress the evidence discovered in his backpack.

**C. The Motion to Suppress the Residence Evidence Is Denied.**

After Vongdala was arrested, an apartment where police believed he resided was searched pursuant to an amended warrant for certain gloves, shoes, clothing, tools, cell phones, and other evidence of the identity of the person who had dominion and control of the apartment. Dkt. No. 54-2. When searching for the items listed in the warrant, officers also found and seized 142 pounds of MDMA, 777.8 grams of methamphetamine packaged in various weights, 2,239 fentanyl pills, and other drugs, plus a money counter and digital scale. Dkt. No. 52-1 at 10–24, Dkt. No. 54-3. The officers also seized paperwork, including a letter from a bank and a casino, as well as a vehicle registration; a rifle, magazines, and ammunition; and a unique item known to have been stolen in a recent burglary. *Id.* The officers seized most of the items listed in the search warrant as well. *Id.*

Vongdala asks the Court to suppress all of the evidence seized because the warrant was unlawful or, in the alternative, to suppress some or all of the evidence seized that is not listed in the warrant.

*1. The Affidavit Establishes a Sufficient Nexus Between the Evidence Sought and the Location to be Searched.*

"[V]alid warrants may be issued to search *any* property, whether or not occupied by a [non-suspect] third party, at which there is probable cause to believe that fruits, instrumentalities, or evidence of a crime will be found." *Zurcher v. Stanford Daily*, 436 U.S. 547, 554 (1978). "The critical element in a reasonable search is not that the owner of the property is suspected of a crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Id*. at 556.

Vongdala contends that the warrant application fails to establish a likelihood that the items to be seized would be found in the apartment. The affidavit states that Detective Jordan believed Vongdala lived in the apartment because (1) GPS tracking data "routinely" showed that his cell phone and car were in the vicinity of the apartment (at an unspecified frequency), (2) Vongdala's car had been observed at the apartment, and (3) Vongdala had been seen exiting the apartment. Dkt. No. 54-1 at 23. Vongdala contends that the lack of specificity as to the frequency of the tracking data undermines Detective Jordan's assumption that he resided at the apartment, and argues that "it is just as plausible that Mr. Vongdala was a visitor." Dkt. No. 60 at 4.

As the Government acknowledged at oral argument, the affidavit could have contained more detail on the tracking data. But the details included nonetheless establish a "fair probability" that the evidence would be found there, and that is all that is required. *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007). "Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a 'commonsense, practical question.'"

*Id*. (quoting *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006)). The key inquiry is not whether Vongdala resided at the apartment; the inquiry is whether "there is sufficient 'cause to believe that the specific "things" to be searched for and seized are located'" in the place to be searched. *Zurcher*, 436 U.S. at 556. Whether Vongdala lived at the apartment or not, the warrant application sufficiently identified Vongdala's connection to the apartment to infer that some of his clothing and tools would be found there. *Cf. United States v. Hove*, 848 F.2d 137, 139–40 (9th Cir. 1988) (finding no nexus where "the affidavit offers no hint as to why the police wanted to search this residence").

*2. The Plain View Exception Applies to the Non-Listed Items Seized.*

"As a general rule, in searches made pursuant to warrants only the specifically enumerated items may be seized." *United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982). Nonetheless, the "plain view" exception permits police to seize evidence of a crime discovered in plain view while executing a lawful search warrant even if that evidence is not listed in the warrant. *Horton v. California*, 496 U.S. 128, 135 (1990). To apply the plain view exception, (1) police must have lawful access to the area where the evidence may be plainly viewed, (2) "its incriminating character must be immediately apparent", and (3) police must "have a lawful right of access" to it. *Id*. at 136–37 (citation modified).

Vongdala argues that because the warrant application mentioned clothing and burglary tools, the other items found during the execution of the warrant should be suppressed as outside the scope of the warrant. Dkt. No. 43 at 13–17. The Government invokes the plain view exception, noting that because the warrant authorized officers to seize clothing and evidence of dominion and control, the officers were permitted to open drawers, closets, and containers where such items would reasonably be stored. Dkt. No. 54 at 15. Because a lawful search of those areas revealed

obvious contraband, the Government contends that the plain-view exception applies to all of the items seized from the apartment. *Id*.

Vongdala disagrees. First, he argues that the warrant is unlawful due to lack of nexus, but the Court has explained why it rejects that argument. Next, he argues that some of the items seized—such as the identity-theft and forgery-related documents—are not obviously contraband. That may be, but the warrant authorized the officers to seize "evidence of dominion and control of the place searched including mail, receipts, identification, bills, rental agreements, licensing documents and other personal property whose owner/possessor may be readily determined." Dkt. No. 54-2 at 5. Even if the documents seized are not obviously contraband, they fall within the scope of the warrant as dominion-and-control evidence—and thus need not be excluded.

Because the items seized but not listed in the warrant were discovered pursuant to a lawful warrant that permitted officers to search the areas where they were found, and were obviously contraband, the Court finds that the plain view exception applies to those items. The warrant authorized the seizure of the other items taken from the residence. The Court will therefore deny Vongdala's motion to suppress the evidence discovered at the residence.

## II. CONCLUSION

For these reasons, the Court GRANTS Defendant's unopposed motion to bifurcate (Dkt. No. 41) and DENIES Defendant's motions to suppress (Dkt. Nos. 42, 43).

Dated this 14th day of September, 2026.

Kymberly K. Evanson
United States District Judge